## Harmon v. Knoll, Appellant.

Argued October 25, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*Edwin D. Strite,* for appellant.

*Edmund C. Wingerd,* with him *Stenger Diehl,* for appellee.

OPINION BY STADTFELD, J., December 17, 1937:

This case involves the claim of Robert J. Harmon against J. Grant Knoll for workmen's compensation. The referee found for the claimant. The Workmen's Compensation Board affirmed the referee's finding that the claimant, as a result of an accident in the course of his employment, suffered a temporary total disability from Sept. 19, 1934, until Jan. 4, 1935, and a partial disability to the extent of twenty-five percent on and after Jan. 4, 1935. The board also affirmed the referee's award of the sum of $214.28, being compensation at the maximum rate of $15 per week during the period of temporary total disability, and the further award of compensation at the rate of $4.47 per week thereafter until disability should cease or change in extent within the limitations of the act. The court of common pleas affirmed the award of the referee and the board. This appeal followed.

The sole question before this court is whether or not the evidence on the record is legally competent and sufficient to sustain the finding of partial disability of the claimant to the extent of twenty-five percent made by the referee and the workmen's compensation board.

The scope of this court's duty is clearly set forth in the case of *Robertson v. Rieder & Sons,* 114 Pa. Superior Ct. 518, 521, 174 A. 604, where Judge JAMES for the court, states the rule as follows: "We have repeatedly held that on appeal the courts may examine the proofs to see whether legally competent evidence is present to support the finding on which the award rests. The act does not mean that the evidence may be weighed as to its probative force and effect and the findings changed by the court to its own belief in that respect. It is the duty of the compensation authorities to decide all questions of fact and the courts to decide those of law: ...... and what the facts are the compensation authorities, whose duty it is to find the facts, may find either from direct proof, circumstantial evidence, or by inference from other facts: ......"

It is not within the scope of this court's duty, therefore, to pass on the facts in the case, but rather to ascertain whether the findings of fact as made by the referee and sustained by the board are based on legally competent evidence.

In the present case, the claimant was employed by the defendant as a carpenter on Sept. 18, 1934, at a weekly wage of $27.50, computed on the basis of an hourly rate of fifty cents and a work-week of fifty-five hours. On that day the claimant, while working as an employee of the defendant on the roof of Dr. B. H. Long in Chambersburg, fell from the roof and suffered certain injuries as a result. Dr. Long, who first examined claimant, and Dr. L. H. Seaton, who had been called into consultation immediately after the accident, testified as to the nature and consequence of the injuries.

Dr. Long testified that this claimant, as a result of the injury, showed a crushed fracture of the second lumbar vertebra, and also a fracture of the third, and the transverse process cracked off the third lumbar vertebra, and that as a result, he has some deformity in the lumbar region, accompanied by a tenderness on pressure, and that in his opinion, these injuries prevented the claimant from carrying on his trade as a general carpenter and that this claimant should not do any heavy work. He further testified that in his opinion therefore, claimant's percentage of disability would be a third of his earning power. Dr. Seaton's testimony indicated virtually the same diagnosis of claimant's injuries. Dr. Seaton concluded that in his opinion, claimant would make from a third to fifty percent of a hand at his work on account of this injury.

As to the competency of the doctors to testify, we are in accord with the opinion of the court below that "medical authorities can testify in compensation cases as to the results of the injuries received by the claimant, describing them in detail, their duration, and what the probable effects will be on the man's earning power, so that the referee may have before him for his assistance in finding the facts in the case all that will prove the result of these injuries. If the physicians so testifying have put before the referee facts on which they can base a conclusion as to what proportion of the earning capacity of a man has been affected by the injury to him, they can express that conclusion." This view of the law is supported by the case of *Telario v. Jefferson & Indiana Coal Co.*, 105 Pa. Superior Ct. 305, 308, 161 A. 486: "The opinions of the doctors, called in the case, might also be considered," and by the case of *Knisely v. Knisely*, 120 Pa. Superior Ct. 140, 148, 182 A. 51: "The testimony of the two doctors, who based their conclusions partly upon the history of the case, was competent, since they stated the facts which they assumed

to be true and which formed the basis of their conclusion: *Kelly v. Watson Coal Co. et al.*, 272 Pa. 39, 42, 115 A. 885, 886; *Jones v. United Iron & Metal Co.*, 99 Pa. Superior Ct. 394, 400."

The sufficiency of the testimony to sustain the decree of the court below remains to be considered. On this question, the principles laid down in *Cavanaugh v. Luckenbach Steamship Co.*, 125 Pa. Superior Ct. 275, 189 A. 789, and in *Plum v. Hotel Washington et al.*, 125 Pa. Superior Ct. 280, 189 A. 792, are entirely controlling. As it was said both in the Cavanaugh case and in the Plum case, in determining the compensation for partial disability to which an employee is entitled under Sec. 306 (b) of the Workmen's Compensation Act, the amount of earnings actually received after an accident is evidence, but not conclusive evidence, helpful in determining what the earning power of the employee is at such time. Other competent evidence having a bearing, cannot be ignored.

In the present case, Dr. Long testified that claimant was disabled to the extent of one-third, and Dr. Seaton testified that claimant's disability was one-third to fifty percent. The significance of such testimony is pointed out in *Cavanaugh v. Luckenbach Steamship Co.* (supra) at p. 278, where Judge PARKER for the court said: "There is sufficient evidence to support the finding of the workmen's compensation board that this claimant suffered a diminution of earning power. The physician called by the defendant admitted that the earning power of the claimant had been reduced by from 20 to 25 percent, while claimant's physician fixed it at 75 percent. This, taken with 'the description by the claimant himself of his physical condition and testimony as to the work he was fitted to perform, furnished a legitimate base for the conclusion of the board."

As to the testimony that following the injury and commencing on Jan. 4, 1935, claimant had been re-

ceiving wages equal to, and for a few weeks, wages higher than what he had received before the accident, there is no doubt that it had been considered by the referee and the board in the determination of the fact of partial disability if any, and its extent. It has been held by this court in *Plum, Appellant, v. Washington Hotel et al.*, supra, in the opinion by Judge PARKER, that the fact that an employee who returned to work for the same employer two months after an accident received the same or higher wages than before, does not, regardless of other facts in the case, deprive the employee of the right to receive compensation for partial disability.

In a separate concurring opinion of this latter case, Judge CUNNINGHAM with whom Judge BALDRIGE joined, said at p. 286: "...... I am of opinion the compensation authorities should determine, under the facts in each case, whether the claimant is actually earning the wages he is receiving. If so, then, although he may still have a physical impairment, he is not entitled to compensation for the period during which he earns such wages. On the other hand, if he does not actually earn such wages, and could not earn them on the open market, but is receiving them merely because his employer sees fit to pay them, he is entitled to compensation in addition to his wages."

So, in this case, the claimant testified he received the same wages, to-wit: fifty cents per hour, from his employer after the accident as before, but for doing work of a lighter nature. He further testified that he had received seventy cents per hour by "pulling a few tricks," on a relief job which he held for a few weeks. He also testified that he had on his next job received fifty cents per hour because the boss "took care" of him. It is not the duty of this court to weigh this evidence in the scales of its judgment. But from this evidence, the referee and the board might properly find that the

wages received by claimant following the accident did not conclusively establish the earning power of the claimant. Both the referee and the board could, however, very properly and upon sufficient evidence—in the light of the doctors' testimony of one-third, to fifty percent disability, and of claimant's own testimony as to his physical efficiency and his explanation of the wages received after the accident—find as a fact that claimant suffered a loss of 25 percent. This fact the referee did find and this finding the board did affirm.

We are of the opinion that there was sufficient legally competent evidence to support this finding of partial disability and the extent of such disability.

The assignments of error are overruled and judgment affirmed.