Hale *v.* Susquehanna Collieries Co., Appellant.

Argued March 1, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Henry A. Gordon,* with him *T. G. Wadzinski,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY STADTFELD, J., April 15, 1937:

This is a Workmen's Compensation case arising on a petition to terminate a compensation agreement. The claimant, Charles Hale, was injured January 24, 1933, while in the course of his employment with the defendant. The claimant was paid compensation, and on September 26, 1934, defendant filed a petition to terminate the compensation agreement, alleging that claimant was able to resume work on September 1, 1934.

Claimant filed an answer, denying that he had recovered from his injuries and averring that he is still totally disabled. The referee found that claimant was partially disabled; that his earning capacity has been reduced twelve dollars per week, and further awarded claimant compensation for such partial disability.

From the decision of the referee, the claimant appealed to the Workmen's Compensation Board, which board modified the partial disability finding of the referee, and found that claimant was totally disabled.

From the finding, conclusion of law and award of the board, the defendant appealed to the Court of Common Pleas of Luzerne County, which court, in an opinion by VALENTINE, J., dismissed defendant's appeal, whereupon Susquehanna Collieries Company, the defendant, appealed to this court.

The board found "as a fact that on August 31, 1934, the claimant was totally disabled."

It is our duty not to balance the evidence, but to determine if there was sufficient competent evidence to sustain the findings of the board, and if so, we are bound thereby: *Slemba v. Hamilton & Sons*, 290 Pa. 267, 138 A. 841.

Claimant appellee while in the course of his employment was struck on the back by a piece of falling rock and sustained a crushing fracture of the 12th dorsal vertebra. An x-ray showed a tender area in his spine and some abrasions of the back. He was 52 years old

at the time of the hearing before the referee. We quote from his testimony: "Q. Did you ever go back to work after you were hurt? A. No, sir. Q. Do you think you could work? A. No, sir. If I could, I would have been at it before this. Q. Your back seems to give you difficulty? A. Yes, plenty of it." Cross-examination by Mr. Gordon: "Q. Have you ever applied for work Mr. Hale? A. No. Q. Would you take a job? A. Now it would have to be an awful easy job if I got it. Q. What kind of a job would you take? A. I will tell you like I told Tommy Cooke. If I could get a job where I could set down or lay down, that is the job—Q. Why do you say you will take that kind of a job? A. That is the only kind of a job I could do. Q. Set down or lay down? A. That's it. Q. That practically puts you out of the mine business doesn't it? A. Yes. Q. Do you not think you could take a job standing up? A. Well may be a little while, I would set down or lay down?"

Doctor Waters, a graduate of Jefferson Medical College in 1912, called on behalf of claimant, testified as to the latter's injuries and that in his opinion, that as a result he has permanent partial disability and that he is in no condition to go back to work as a miner's laborer, and labor in the mines of any kind, and as far as this hard laborious work is concerned that "he is out of that. I suppose there are jobs he can do, but what these jobs are I don't know. I would say 70 per cent anyhow of his earning power was destroyed. ...... Q. Are you acquainted with the kind of work men perform around the mines, Doctor? A. Yes, I am. Q. Do you think this man could do work of a slate picker, sitting down? A. No, I don't think he could. I think it would be one of the hardest jobs for him, Mr. Gordon. Q. Why would that be hard? A. He has a deformity of that now, and slate picking, bending over would make it worse. Q. You heard him say he could take a job

sitting down? A. Sitting down and lying down awhile, that is what he tells me. Q. What, Doctor, would prevent him from taking work of a slate picker sitting down? A. Do you know how a slate picker works? Q. Just tell me, Doctor. A. I think the injury in his back bending over. Q. What incapacity is there about that injury that would prevent him from doing the work of a slate picker? A. I think bending over is just increasing the pressure on that. Q. Could he take a job that requires him to be standing up? A. Yes, I think he could do that better than he could do sitting down himself. Q. Doctor, in what way now, exactly in your opinion, is this, result of this injury, disabling this man? A. He has got a crushing of the 12th thoracic vertebra. It is jammed down pretty near tight on that anterior end. Q. How does that disable him? A. There must be some pressure there I think, Mr. Gordon. Q. You are assuming there is some pressure? A. Yes. Q. What effect would that have, assuming, as you say, there is some pressure there? A. I think there would be pain and weakness there. Q. What is weakened there? A. His entire back structure is weakened there. Q. And is that the point of disability resulting from the injury? A. I think so. By the Referee: Q. Do you think the cord is impinged upon? A. I think it is somewhat, Mr. Lewis. I certainly do. I don't think he could have crushing of that amount without having some pressure on that cord."

While there was countervailing testimony on behalf of defendant, the board accepted the testimony of claimant and his doctor and in our opinion it is sufficient to sustain the award and the judgment thereon.

The testimony made claimant a "nondescript" in the labor market—unfitted to do even light work of a general character. See *Consona v. R. E. Coulborn & Co. et al.*, 104 Pa. Superior Ct. 170, 158 A. 300. Under the evidence adduced by it, the employer had the burden

of showing that work which claimant was able to do was available. No effort was made to meet that burden. We agree with the court below that this case is ruled by the Consona case rather than by *Yednock v. Hazle Brook Coal Co.*, 109 Pa. Superior Ct. 182, 167 A. 236. See also *Jones v. Hazle Brook Coal Co.*, 119 Pa. Superior Ct. 409, 179 A. 783.

The assignments of error are overruled and judgment affirmed.